**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RUDOLPH ROYBAL,

                    Petitioner,

       vs.

KEVIN CHAPPELL, Warden of the California State Prison at San Quentin,

                    Respondent.

Case No.     99cv2152-JM (KSC)

**DEATH PENALTY CASE**

**ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

      Petitioner filed a First Amended Petition ["FAP"] with the Court on June 17, 2013. (Doc. No. 215.) After the Court issued a revised briefing schedule,[1] on August 1, 2013, Petitioner filed a Motion for Leave to File a First Amended Petition ["Mot."], arguing that a first amended habeas corpus petition is necessary for a complete review

---

[1] The original scheduling order contemplated that Petitioner would file a Motion for Leave to Amend, along with the First Amended Petition, on or before June 17, 2013. (Doc. No. 214.) Petitioner filed the First Amended Petition on June 17, 2013, without a motion for leave to amend. After a July 12, 2013 status hearing with the Court, the parties met and agreed upon a revised briefing schedule, and the Court accordingly ordered that the Motion for Leave to Amend be filed on or before August 1, 2013, Respondent's Opposition be filed on or before September 17, 2013, and Petitioner's Reply be filed on or before November 1, 2013. (Doc. No. 219.)

of: (1) the claims initially filed with the Court on September 29, 2000, and (2) those additional claims later raised and exhausted in case number S156846 before the California Supreme Court.  (Doc. No. 220 at 1, 8.)

On September 16, 2013, Respondent filed an Opposition ["Opp."].  (Doc. No. 225.)  Respondent argues that: (1) the newly exhausted claims are untimely; (2) equitable tolling is not available based on the Court's prior statements regarding stay and abeyance or the conduct of prior counsel; (3) the majority of the newly-added claims do not relate back to original petition; (4) amendment is futile with respect to several claims due to procedural default; and (5) amendment is futile with respect to all of the new claims because Petitioner cannot meet the standard for habeas relief under 28 U.S.C. § 2254. (Opp. at 8-24.)[2]  On November 1, 2013, Petitioner filed a Reply with accompanying exhibits.  (Doc. No. 239.)  Petitioner contends that: (1) the amended petition is timely because this Court indicated its intention to stay the initial petition pending the exhaustion of state court remedies as to the new claims, and because the "egregious facts" of this case justify equitable tolling, and (2) Respondent's request that the Court deny several claims on the basis of procedural default, and deny the entire petition on the basis of futility, is tantamount to a motion for summary judgment and requires additional briefing prior to adjudication.  (Reply at 7-41.)

The Court has thoroughly considered the pleadings, the attached exhibits, and the procedural and factual history of the case.  For the reasons discussed below, the Court **GRANTS** Petitioner's Motion for Leave to file a First Amended Petition.

///

///

///

///

///

---

[2]  In citing to the filings in this case, the Court will refer to the pagination assigned by the Southern District's Electronic Case Filing ("ECF") system, in which all page numbers are located on the top right-hand side of each document.

99cv2152

## I.     PROCEDURAL HISTORY[3]

On July 21, 1992, a San Diego County jury found Petitioner guilty of first-degree murder, first-degree robbery and first-degree burglary in the in the death of Yvonne Weden. (CT 2506-09.) As to each offense, the jury found true that Petitioner personally used a knife, that he inflicted great bodily injury on the victim, and that the victim was a person 60 years of age or older.   (Id.)   The jury also found true two special circumstances, felony-murder robbery and felony-murder burglary. (Id.) On August 24, 1992, the jury sentenced Petitioner to death.  (CT 2534-35.)  The trial court denied Petitioner's motion for a new trial and sentenced Petitioner to death on October 20, 1992. (CT 2536-37.)

On January 24, 1996, attorney Barry Morris was appointed by the California Supreme Court to handle Petitioner's direct appeal proceedings and state habeas petition. On direct appeal, the California Supreme Court affirmed Petitioner's conviction and sentence on November 12, 1998.  See People v. Roybal, 19 Cal. 4th 481 (1998).  On January 13, 1999, the California Supreme Court denied the petition for rehearing.  After one extension of time, a petition for writ of certiorari was filed in the United States Supreme Court on May 13, 1999, which was denied on October 4, 1999.

On October 5, 1999, Petitioner filed a motion for appointment of counsel in this Court. On December 14, 1999, Elizabeth Barranco and Russell Babcock were appointed as federal habeas counsel.  On April 6, 2000, Barry Morris moved to be relieved as state habeas counsel by the California Supreme Court, without filing a state habeas petition. On June 16, 2000, Petitioner moved in this Court to equitably toll the deadline for filing the federal habeas petition in light of the delay in receiving Petitioner's files and the

---

[3] Unless otherwise stated, the procedural history recounted above was obtained from this Court's electronic docket (case number 99cv2152) and the California Supreme Court's docket with respect to Petitioner's direct appeal (case number S029453) and state habeas petition (case number S156846).  The Court takes judicial notice of the proceedings before the California Supreme Court.  See Fed. R. Evid. 201(b); see also Fed. R. Evid. 1101 (e) (Federal Rules of Evidence apply to habeas corpus proceedings). The California Supreme Court docket is available electronically at http://www.courts.ca.gov/supremecourt.htm

disorganized state of those files, and at a hearing held on June 30, 2000, the Court denied the request.  The Court and parties agreed that the timely filing deadline for the federal petition would be October 3, 2000.  (Doc. No. 239-1 at 27, Ex. C to Reply.)  With respect to the filing of the federal Petition and pursuit of state remedies, the Court stated that:

> I think that's the manner in which this case should proceed, that there should be a filing of an exhausted federal habeas petition, that counsel at that point, if they need to put a substantial amount of their focus and attention on what's happening with the state petition, that they can turn their efforts in that direction, deal with the California Supreme Court, seek compensation there; but at least you'll have an exhausted petition on file here.  If it's necessary to stay that petition following the pursuit of a state petition, then this Court will be ready, willing, and able to stay the federal claim upon a showing of good cause; I would have no reluctance in doing so.

(Id. at 63.)  At the end of the June 30 hearing, the Court reiterated as follows: "The way things stand right now, I'll expect to see an exhausted federal petition filed by October 3 unless I see a further motion come in."  (Id. at 77.)

On July 31, 2000, federal counsel Barranco and Babcock filed a motion in the California Supreme Court, requesting appointment as state habeas counsel.  Both Mr. Morris' motion to be relieved and Ms. Barranco and Mr. Babcock's motions for appointment were denied by the California Supreme Court on August 16, 2000.

On September 29, 2000, federal counsel Barranco and Babcock timely filed a federal habeas petition in this Court.  The federal Petition contained a footnote indicating in part that, "[p]ursuant to the ruling of this Court on June 30, 2000, petitioner alleges herein only those claims previously exhausted in the courts of the State of California. Petitioner intends to file a subsequent petition in this court should claims which have not yet been adjudicated in the courts of the State of California be denied in that forum." (Doc. No. 25 at 1, fn.1.)  Respondent filed an Answer to the federal Petition on October 27, 2000, and on May 2, 2001, Petitioner filed a Traverse.

At a July 13, 2001 status hearing, the parties and the Court engaged in a discussion that centered on the status of the state and federal court proceedings and explored possibilities regarding federal funding for counsels' work.  The Court indicated that

"ultimately you want to get a petition over here that's complete, where all claims have been exhausted, and to the extent that there are state claims that will ultimately be recast as federal claims, then there is a need to ultimately get the case in that posture so that it can get - - we can get moving on with this case, we can proceed to an evidentiary hearing, and ultimately we can get this case ruled upon." (Doc. No. 239-1 at 106, Ex. E to Reply.) During the hearing, Respondent indicated that "we are not going to accept what I assume is this Court's implicit ruling that anything newly discovered at this point in time or from this point in time into the future can in fact be presented to this Court and ruled on on the merits." (Id. at 113.) Respondent asserted that the federal case, as it stood, "is ripe for decision." (Id. at 114.) The parties also engaged in a lengthy discussion on the Court's ability to stay the case, the nature of the state proceedings given the lack of a pending petition, and the impact of prior state habeas counsel's failure to timely file a state habeas petition. The Court commented that "[t]he underlying circumstances in this case are most unusual." (Id. at 126.) In response to Respondent's repeated assertion that the case was ready for decision, the Court stated:

> Congress never could have contemplated this kind of a scenario, Ms. Boustany [prior counsel for Respondent], with all due respect, and if you can find me one case in the entire legislative history behind AEDPA that indicates that Congress was contemplating this kind of an unusual circumstance, I'd be very interested in having that cited to me.

(Id. at 153.)

On July 25, 2001, this Court ordered federal counsel to again seek appointment in state court. On November 5, 2001, federal counsel moved to be appointed state habeas counsel. On November 15, 2001, attorney Morris again moved to withdraw as state habeas counsel. On December 12, 2001, the California Supreme Court granted permission for Morris to withdraw and appointed Barranco and Babcock as state habeas counsel. At a December 14, 2001 status hearing, attorney Barranco estimated that they could have a state habeas petition on file by June 1, 2002. (Doc. No. 239-1 at 189, Ex. G to Reply.) At a July 1, 2002 status hearing, attorney Barranco indicated a revision to the schedule, estimated that she expected to submit a draft of the petition to the

California Appellate Project for review by August 1, and stated that she hoped to have it filed with the California Supreme Court in September or October, 2002. (Doc. No. 239-1 at 196-98, Ex. H to Reply.) Between January and April 2003, the Court scheduled and held several status conferences with counsel for Petitioner to discuss Petitioner's representation, communication difficulties between co-counsel, and their communication with Petitioner. (See Doc. Nos. 60-67, Ex. 37 to FAP.)

On May 21, 2003, this Court issued an order relieving attorney Babcock as counsel of record and designating him "of counsel," and stating that Mr. Babcock "will remain available for reappointment by the court as counsel of record in the event of disability, incapacity, or other inability of attorney Elizabeth Barranco to serve as counsel on this case in the future." (Doc. No. 68.) On or about June 4, 2003, the Court received a letter from Petitioner, and, pursuant to Local Rules, forwarded the letter to counsel for Petitioner. (Doc. No. 69.) In the letter, Petitioner stated that with Mr. Babcock's removal as counsel "the Court has removed the only reliable representation I have," and said that he and Ms. Barranco "have not seen eye to eye on issues related to my appeal." (Id. at 2.) Petitioner stated that "I have tried to communicate with her, to no avail. She refused to communicate with me concerning matters related to my appeal. I have requested numerous time [sic] to be involved in the proceeding of my case. I have heard more from this Court, then [sic] Mrs [sic] Barranco." (Id.) Petitioner also stated that in the two times he spoke to her in person, "not once has she talked to me about matters relating to my case." (Id. at 3.) Instead, Petitioner stated that Ms. Barranco "has communicated to me facts of her personal life, that I have no interest in and has nothing to do with my appeal. She hired someone to work on my case, then fired them. This has been a topic of conversation for some time. In her communication of late, she has expressed distrust in other's working on my appeal." (Id.) Petitioner requested "assistance in finding an agreeable solution to this impasse. I want the Court to be aware of the conflict between myself and Mrs [sic] Barranco." (Id.)

///

On August 28, 2003, this Court ordered attorney Barranco to appear at a hearing on September 3, 2003, regarding her continued representation of Petitioner, and indicated that counsel "is strongly advised that her failure to appear may result in her being relieved as counsel of record for petitioner." (Doc. No. 70.)  After attorney Barranco failed to appear at the September 3, 2003 hearing, on September 4, 2003, the Court set an order to show cause hearing for September 17, 2003 and again ordered Barranco to appear, again advising her that "her failure to appear will result in her being relieved as counsel for Petitioner." (Doc. No. 72.) At the September 17, 2003 hearing, the Court ordered Barranco to submit a written response to the order to show cause, and set another hearing for October 21, 2003.  On October 21, 2003, the Court withdrew Barranco as counsel and substituted in attorney Babcock.  (Doc. No. 75.)

At an October 23, 2003 hearing, attorney Babcock indicated his desire to remain as second counsel on the case and to have a new primary counsel appointed.  (Doc. No. 239-2 at 3, Ex. K to Reply.)  He indicated that the case was now at "ground-zero," and stated that:

> At one point there were approximately 60 to 70 banker's boxes of original documents that included notes of the attorneys, DNA material, exhibits, investigative reports, and I don't believe any of that material is any longer extant.  It was all stored at Ms. Barranco's house, and my understanding from when I went there with my investigator, the material has been destroyed, that it was thrown out basically.

(Id. at 4.)  He indicated that it would be "extremely difficult for counsel" going forward, "because it's going to involve trying to retrieve as much of these lost memories as possible," and opined that "a lot of this material will be never be able to be retrieved because there was only one copy of those original notes."  (Id.)  While he had been told work was being done on the case, Babcock stated that "I don't have any evidence that any work was done over the past six to eight months on the case.  I haven't seen any work product, I haven't been provided any even though I repeatedly requested it."  (Id. at 8.)  When asked for details, Babcock stated that he was originally responsible for organizing the files and delivering them to Barranco, and stated that:

1
2
3
4

My understanding was from a conversation I had with Ms. Barranco in the presence of my investigator was she underwent an eviction process at her home, and when she was being evicted from her home, the boxes were left out in the rain, they were rained upon, and they were abandoned, and basically at that point they were thrown out in the trash by another individual, not herself.  When I went to see her, that's what she indicated to me.

5
6
7

Again, I'm indicating to the Court that I'm not talking about transcripts, I'm not talking about cases; I'm talking about investigative reports, I'm talking about photos from this man's life, basically his entire life in these 40 boxes.

8 (Id. at 9.)  Babcock also noted that while Barranco remained lead counsel before the

9 California Supreme Court, the deadline for filing a state habeas petition remained

10 pending, and was due in December 2003. (Id. at 13.)  Babcock agreed to inform counsel

11 for Respondent of the current situation, and indicated plans to file a motion before the

12 court regarding the status of the case and potential suggestions for proceeding in the

13 future.  (Id. at 17.)

14   On November 24, 2003, the Court held another status conference and indicated

15 that it had ordered Barranco to appear with all material pertaining to Petitioner's case.

16 (Doc. No. 239-2 at 27, Ex. L to Reply.)  The Court noted that Barranco had not appeared,

17 but the Court received a fax from Barranco a few minutes prior to the scheduled start of

18 the hearing.  (Id. at 29.)  In the fax, Barranco indicated that she did not receive notice of

19 the August 28, 2003 order to show cause hearing until provided notice by co-counsel on

20 September 9, 2003.  Barranco asked the Court to continue this hearing, explaining that

21 she had been going through child custody issues since June 2003, and that there was a

22 hearing that morning on an emergency motion she had made in that matter.  (Id. at 29-

23 30.)  Barranco stated that she needed to retain the files on the Roybal case, as she

24 remained counsel of record in state court, and indicated plans to check with the Court's

25 clerk after the family court hearing.  (Id. at 30.)  In response, the Court trailed the status

26 hearing to the afternoon and had a message to that effect sent to the fax number on

27 Barranco's letter, but Barranco failed to respond to the message or contact chambers.

28 (Id. at 33.)

At a December 3, 2003 status conference, Babcock stated that he still had no contact with Barranco and was concerned about the looming December 11, 2003 deadline to file the state habeas petition, as well as the status of any documents in her possession. (Doc. No. 239-2 at 40-41, Ex. M to Reply.) The Court and counsel also discussed the possibility of successor counsel and potential time and financial considerations. (Id. at 42-46.) The Court issued an OSC for Barranco and set a date for December 16 for her to appear. (Id. at 47.) Babcock indicated that he had contacted counsel for Respondent to apprise her of the situation. (Id. at 48.)

Barranco appeared at the December 16, 2003 hearing, where the Court indicated that the primary concern was securing and preserving case materials in her possession. (Doc. No. 239-2 at 61-62, Ex. N to Reply.) Barranco stated that, "No physical evidence that I know of was lost or destroyed," and said she believed only paper transcripts had been lost. (Id. at 62.) Barranco also indicated a need for the materials in order to complete the state habeas petition, as she remained counsel of record in that matter. (Id. at 62-63.) Barranco said that there were 30 boxes in the beginning, and she presently had about 12. (Id. at 65.) The Court ordered Barranco to transfer all remaining files in her possession to Babcock by the end of the month of December, in order to ensure the security of those materials. (Id. at 70-74.)

At a January 6, 2004 hearing, Barranco appeared by phone and indicated that over two meetings in December, she had turned over all files in her possession to Mr. Stevens, an investigator employed by Babcock. (Doc. No. 239-2 at 81, Ex. O to Reply.) Stevens stated that he had traveled to her home nine times total, went through disorganized materials in her garage with her, and while he believed he had all of the relevant files from the garage, he "can't be certain because some of the material was rather disorganized and in a condition that couldn't be easily read." (Id. at 85-86.) Stevens stated that the materials he obtained would probably fill about 10 boxes. (Id. at 90.) Barranco stated that she did not have any case materials on her computer that Babcock did not already have copies of. (Id. at 92.) The Court and counsel discussed possibilities

for record reconstruction and the posture of the state case. (Id. at 95-101.) Respondent again articulated that "this Court has a fully exhausted pending petition before it and a case that can and should be decided." (Id. at 102.) The Court ordered another status conference to allow time for an inventory of the remaining case materials. (Id.)

The Court held another status conference on February 6, 2004, for further discussions on the status of the record, efforts at reconstruction, and the possibility of appointing successor federal habeas counsel. (Doc. No. 239-2, Ex. P to Reply.) With respect to Barranco's prior representations that the filing of a state habeas petition had been imminent, Babcock stated that the inventory of materials did not reveal drafts of anything, and that "we're in one of two situations right now. We're either in a situation where those representations were not true, or we're in a situation in which the material was in fact in a draft form and it was destroyed; and I'm not aware of which of those two possibilities is the situation." (Id. at 125.) After further discussions on possibilities for proceeding, the Court stated that, "[w]hat has happened in this case is unfortunate and represents perhaps the most bizarre set of circumstances I've ever seen in any case, whether civil or criminal, since I've been on either bench." (Id. at 134.) The Court opined that it "it doesn't seem to me, given the history of this case and the difficulties counsel have had, possible for counsel to continue either with the state matter or the federal matter. Seems to me that it would be appropriate for counsel to withdraw at this point, but to let new counsel come in and start fresh." (Id.)

Respondent again noted that "we would like to reiterate or object or lodge our objection, again, as I think we've stated all along and been consistent, we feel that there is a fully exhausted petition before this Court which this Court can decide." (Id. at 135.) The Court noted that either route - whether proceeding on the federal petition as currently constituted, or staying the federal action so a state petition could be filed and then integrated into the federal petition - would involve a significant length of time, and inquired who would represent Petitioner if the Court chose to follow Respondent's proposed course of action. (Id. at 137-38.) The Court noted that current federal and state

counsel intended to withdraw, and prospective counsel noted that Respondent's option would "be a death blow" to their entry into Petitioner's case, as it would present "an impossible situation." (Id. at 139-40.) The Court indicated that "as a practical matter we need to give new counsel an opportunity to get into the case" and "that even if we were to go down the path that you have suggested, that is, proceeding on the petition, we are in a perilous situation." (Id. at 142.) The Court then stated:

> Knowing what I know obviously about the status of present counsel, I simply think it would be a gross injustice to force Mr. Babcock at this point to proceed in light of the history of this case and fundamentally unfair to the petitioner. That is my reaction at first blush. [¶] I know what the position of the a [sic] AG's office is in cases like this. It seems to me that there must be some discretion available to the office in exceptional cases to in a sense show some understanding and patience, and perhaps agree that the best policy may not be to forge ahead with what would be in this case the petition that's currently filed with this Court. It seems that if there is any discretion to be exercised, that this would be a case demanding that discretion.

(Id. at 142-43.) The Court indicated that if Respondent could not countenance what the Court was contemplating, Respondent may be able to seek relief or a ruling from the Ninth Circuit. (Id. at 143.) The Court indicated that "at this time my inclination would certainly be to continue to proceed along the lines of allowing the state habeas proceedings to come to a completion prior to proceeding with the merits of the federal habeas petition." (Id. at 151.)

On March 12, 2004, attorneys John Lanahan and Elizabeth Missakian were conditionally appointed as federal habeas counsel, subject to their concurrent appointment as state habeas counsel. (Doc. No. 239-2, Ex. Q to Reply.) On July 1, 2004, Babcock moved to withdraw as state habeas counsel and on August 30, 2004, Lanahan and Missakian moved for appointment as state habeas counsel. On September 29, 2004, the California Supreme Court removed Barranco as state habeas counsel, and the state supreme court also noted that "Barranco is hereby referred to the State Bar of California for appropriate disciplinary proceedings in light of her abandonment of her condemned client." (Case No. S029453 at http://www.courts.ca.gov/supremecourt.htm.) Also on September 29, 2004, the California Supreme Court granted Babcock permission

to withdraw as counsel, and appointed Lanahan and Missakian as state habeas counsel. On October 29, 2004, the Court converted the conditional appointment of Lanahan and Missakian to an unconditional appointment and relieved Babcock of further representation in Petitioner's federal habeas case.

The First Amended Petition contains a detailed account of current counsels' actions in attempting to recover and reconstruct the trial files and record in Petitioner's case. For instance, counsel contacted the trial prosecutor for a copy of trial discovery, and completed review of that material by December 2004. (Doc. No. 215-3 at 18, citing Ex. 33 to FAP.) Counsel for Respondent provided a copy of the appellate record pursuant to the Court's July 26, 2004 order, which took several months to review and annotate after completing review of the trial discovery. (Ex. 33 to FAP at 8-9.)

Starting in April 2005, Missakian began a review of the recovered files received by Babcock and Barranco, and as stated in the First Amended Petition:

> The review of the boxes and their contents was an extraordinarily difficult task because of their condition. The boxes themselves were moldy and clearly damaged by water. The documents inside the boxes were moldy, malodorous, covered in many cases with animal feces and urine. At one point, when counsel had completed review of about half the boxes, she had to go to Urgent Care because of an allergic reaction to the mold. She completed her review of these boxes wearing a surgical mask and had three fans running in her office to protect against the stench emanating from the boxes.

(Id. at 19, citing Ex. 33 to FAP.) Concurrently, counsel states that they also began a review of boxes sent by the California Appellate Project. (Id.) Counsel also requested copies of requests made by trial counsel under Penal Code section 987.9 in an attempt to identify and contact any experts retained by trial counsel. (Id. at 19-21.) Counsel also contacted numerous correctional and rehabilitative institutions in an attempt to obtain additional records, obtained an additional box of materials from the Office of the Public Defender, an additional box in 2005 from Barranco, some computer files from trial co-counsel Cannon, and additional computer files from paralegal Diana Pickett, who had been retained by Barranco. (Id. at 21-22.)

///

The state court record reflects that counsel made several requests to unseal records. On June 29, 2005, the California Supreme Court granted a May 5, 2005 request for access to sealed trial records. (See Case No. 029453.) On November 15, 2006, the state court denied a request to unseal requests made by prior state habeas counsel, without prejudice to renewing the request and providing notice to prior counsel. On April 18, 2007, the state court granted the request to unseal prior state habeas counsels' funding requests and status reports.

The record also reflects that a discovery hearing was held in San Diego County Superior Court on March 22, 2007. (Ex. 59 to FAP.) Petitioner states that "the Honorable William D. Mudd viewed what remained of Mr. Roybal's trial files and found that twenty to twenty-three boxes had been delivered by Attorney Morris to Attorneys Barranco and Babcock, and that nine boxes now remained. All of the documents had been damaged, some worse than others." (Doc. No. 215-3 at 15, citing Ex. 59 to FAP.)

On October 1, 2007, counsel filed a state habeas petition in the California Supreme Court on behalf of Petitioner, in Case No. S156846. On November 13, 2007, this Court held a status hearing, and counsel for Petitioner inquired whether they should amend the pending federal Petition at that time or wait until the conclusion of the state habeas proceedings. (Doc. No. 239-2 at 212, Ex. T to Reply.) After Respondent expressed no preference, the Court and Petitioner's counsel had the following exchange:

| The Court: | Well, I don't think - - my instinct would be at this point - - and I'm not ruling on this - - |
|---|---|
| Mr. Lanahan: | Right. |
| The Court: | - - because you haven't presented it; it's certainly not ripe - - |
| Mr. Lanahan: | Correct. |
| The Court | - - but I think at this point we're looking for judicial economy, and I would think that perhaps the appropriate way - - that you're not prejudiced, I don't see any prejudice by waiting until the California Supreme Court acts on this and at that point you file an amended petition. Basically we've been holding this case in abeyance - - |

| | | |
|---|---|---|
| 1 | Mr. Lanahan: | Right. |
| 2 | The Court: | - - until you had an opportunity to file a fully integrated petition before the California Supreme Court, giving that Court an opportunity to rule.  And so I think your instinct, Mr. Lanahan, is a sound one at this point, that it makes sense to hold off, and - - |
| 3 | | |
| 4 | | |
| 5 | Mr. Lanahan: | Okay. |
| 6 | The Court: | - - if there's an issue that evolves from that, then we'll have to deal with it.  I'm not - - I don't want to in any way discourage you from doing the research that you and Ms. Missakian may feel appropriate on the question, but that's - - |
| 7 | | |
| 8 | | |
| 9 | Mr. Lanahan: | Okay, Well I - - |
| 10 | The Court: | - - my off-the-cuff - - |
| 11 | Mr. Lanahan: | Right. |
| 12 | The Court: | - - observation. |
| 13 | Mr. Lanahan: | Okay. |
| 14 | The Court: | Ms. Boustany? |
| 15 | Ms. Boustany: | I have nothing really to add. |

(Id. at 213-14.)

On April 28, 2008, Respondent filed an Informal Response to the state habeas petition, and on December 23, 2008, Petitioner filed an Informal Reply.  On January 3, 2013, the California Supreme Court denied the state habeas petition.

On January 17, 2013, this Court held a status hearing and later issued a briefing schedule, setting a deadline for filing the Amended Petition and a Motion for Leave to Amend the Petition, on or before June 17, 2013.  On June 17, 2013, Petitioner filed the First Amended Petition.  As discussed earlier, after a July 12, 2013 status hearing, the parties agreed upon, and the Court ordered, a revised briefing schedule.  Petitioner's Motion for Leave to Amend was filed August 1, 2013.  Respondent filed an Opposition on September 16, 2013, and on November 1, 2013, Petitioner filed a Reply.

///

///

99cv2152

## II.    STATUTORY AND EQUITABLE TOLLING - GENERALLY

Under 28 U.S.C. § 2244(d)(1), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"], a state court prisoner has one-year to seek federal habeas corpus relief from a state court judgment.  In most cases, this time period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244 (d)(1)(A).  However, the AEDPA allows that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted towards any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

The United States Supreme Court has also held that "§ 2244(d) is subject to equitable tolling in appropriate cases."  Holland v. Florida, 560 U.S. 631, ___, 130 S.Ct. 2549, 2560 (2010).  To warrant equitable tolling, a habeas petitioner must establish that: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  Holland, 130 S.Ct. at 2562, quoting Pace v. DiGuglielmo, 644 U.S. 408, 418 (2005).  The Ninth Circuit has held that equitable tolling is "unavailable in most cases."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); see Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) ("[T]he threshold necessary to trigger equitable tolling (under AEDPA) is very high, lest the exceptions swallow the rule.") (citation omitted).

"The prisoner must show that the 'extraordinary circumstances' were the cause of his untimeliness."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003), quoting Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir. 2003).  "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on (the petitioner's) part, all of which would preclude the
///

1  application of equitable tolling.'" <u>Waldron-Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011

2  (9th Cir. 2009), quoting <u>Harris v. Carter</u>, 515 F.3d 1051, 1055 (9th Cir. 2008).

3          "Grounds for equitable tolling under § 2244(d) are 'highly fact-dependent.'" <u>Laws</u>

4  <u>v. Lamarque</u>, 351 F.3d 919, 922 (9th Cir. 2003), quoting <u>Whalem/Hunt v. Early</u>, 233

5  F.3d 1146, 1148 (9th Cir. 2000) (en banc); <u>see also</u> <u>Doe v. Busby</u>, 661 F.3d 1001, 1011

6  (9th Cir. 2011) ("Like any equitable consideration, whether a prisoner is entitled to

7  equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas

8  court which may be guided by 'decisions made in other similar cases.'"), quoting

9  <u>Holland</u>, 130 S.Ct. at 2563.

10  **III.   DISCUSSION**

11          Here, the United States Supreme Court denied the petition for writ of certiorari on

12  October 4, 1999, at which time Petitioner's judgment of conviction was finalized.  <u>See</u>

13  28 U.S.C. § 2244(d)(1)(A).  As noted above, Barry Morris, who was appointed to

14  represent Petitioner on his direct appeal and state habeas proceedings, did not file a state

15  habeas petition, and on October 5, 1999, Petitioner filed a motion for appointment of

16  counsel in this Court.  On December 14, 1999, Elizabeth Barranco and Russell Babcock

17  were appointed as federal habeas counsel.

18          In the absence of equitable or statutory tolling, Petitioner's limitations period

19  under AEDPA expired on October 3, 2000.  While prior federal habeas counsel timely

20  filed a federal petition on September 29, 2000, containing only the exhausted claims

21  previously presented on direct review, as directed by this Court, the filing of a federal

22  petition does not toll the statute of limitations.  <u>Duncan v. Walker</u>, 533 U.S. 167, 172

23  (2001); <u>King v. Ryan</u>, 564 F.3d 1133, 1141 (9th Cir. 2009).  The Amended Petition,

24  which was filed on June 17, 2013, is therefore only timely if equitable and/or statutory

25  tolling is available in Petitioner's situation.

26          Petitioner asserts that prior state and federal habeas counsel Barranco's failure to

27  comply with professional standards of care in her representation of Petitioner, her

28  "deliberate misrepresentation of her efforts" to Petitioner and to the Court, as well as co-

counsel Babcock's failure to monitor her activity and misrepresentations regarding his observations on Barranco's lack of progress on the state petition, "justify equitable tolling of the delay from the appointment of attorneys Barranco and Babcock in 1999, to the denial of the state petition in case number S156846 on January 3, 2013." (Reply at 25-26.) Respondent maintains that Petitioner cannot establish entitlement to equitable tolling, either through the implication that he was misled by the Court's reference to a stay-and-abey order, as Petitioner failed to request or procure any such order, or on the basis of attorney misconduct, as Petitioner fails to show that he exercised the necessary reasonable diligence. (Opp. at 13-14.)

### A.    Petitioner's Entitlement to Equitable and/or Statutory Tolling

The United States Supreme Court has allowed that "at least sometimes, professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." Holland, 130 S.Ct. at 2563. The Ninth Circuit has also indicated on numerous occasions that equitable tolling may be available in cases involving misconduct of habeas counsel. In Spitsyn, despite the fact that habeas counsel "was hired nearly a full year in advance of the deadline, [counsel] completely failed to prepare and file a petition." Id., 345 F.3d at 801. This was in addition to the fact that petitioner and his mother contacted counsel numerous times, to no avail, and the petitioner requested the return of his files, which the attorney kept until two months after the limitations period expired. Id. In Doe, the Ninth Circuit found habeas counsel's performance constituted "extraordinary circumstances" in a case where the petitioner hired an attorney to file his federal petition, paid counsel $20,000 in advance and provided counsel with his files, yet, "Not only did the attorney not file a timely petition, he filed no petition at all, in spite of his numerous promises to the contrary. When Doe eventually sought his files from his attorney, the attorney took six months to return them." Id., 661 F.3d at 1012.

As noted above, a "fact-specific inquiry" is required to determine whether equitable tolling is appropriate. Spitsyn, 345 F.3d at 799. In this case, the record is

replete with evidence that Petitioner was not only abandoned by his first state habeas counsel, but that successor state/federal habeas counsel's misrepresentations, failures, and actions, which allowed the destruction of Petitioner's case files, constituted egregiously deficient performance.  The Ninth Circuit has held that "attorney misconduct that is sufficiently egregious to meet the extraordinary misconduct standard can be a basis for applying equitable tolling."  Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010), citing Spitsyn, 345 F.3d at 801.

It is clear that as early as 1998, Petitioner attempted to raise his concerns about state habeas counsel's failure to communicate and failure to send Petitioner copies of documents filed on his behalf.  (See Doc. No. 25 at 148-49, Ex. to Decl. of Barranco). In August 1999, the record reflects that Petitioner sent a letter to the California Supreme Court "to express some serious concerns" about state counsel Barry Morris, indicating that he had been informed by an attorney with the California Appellate Project that Mr. Morris "has abandoned my case," and stated: "I respectfully request that this letter be filed with the record in my case.  I further request that this Court investigate this matter for me because I know nothing about the law, and I need a competent lawyer to represent me."  (Id. at 150.)  While Morris, in a March 2000 motion to withdraw as counsel, indicated that he made the decision to withdraw as state habeas counsel in March 1999, the record does not reflect if or when he informed Petitioner of this decision.  (Doc. No. 25 at 168-69, Ex. to Decl. of Babcock.)

Petitioner's request for the appointment of federal habeas counsel was filed on October 5, 1999, one day after his conviction was finalized, and indicated that "[t]he attorney who represented me in state court proceedings, Barry Morris of Hayward, California, has advised me that he is not available to represent me in these federal habeas proceedings."  (Doc. No. 2 at 3.)  Babcock and Barranco each attached declarations to the petition filed on September 29, 2000, detailing Morris' lack of action on Petitioner's state habeas case, stating that they were unaware of Morris' lack of progress prior to their appointment to the federal case, recounting their efforts to be appointed as state habeas

counsel, and outlining issues regarding the minimal amount of funding that remained available for state habeas work, as well as noting that their prior requests for appointment at the state level had been denied.  (See Doc. No. 25 at 140-47, 153-59.)

It is also clear that a capital habeas petitioner is statutorily entitled to the appointment of counsel to assist him in the development and preparation of his federal habeas petition.[4]  See Calderon v. United States Dist. Court for the Central Dist. of Cal. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en banc), abrogated on other grounds by Woodford v. Garceau, 538 U.S. 202, 206 (2003); see also McFarland v. Scott, 512 U.S. 849, 859 (1994) (in which the Supreme Court held that in establishing 21 U.S.C. § 848(q), which "provid[ed] indigent capital defendants with a mandatory right to qualified legal counsel in these [habeas] proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty."); see also 18 U.S.C. § 3599.[5]  In McFarland, the Supreme Court stated that "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." Id., 512 U.S. at 858.  Similarly, in California, a capital prisoner has a codified right to counsel for their state postconviction proceedings.  See Cal. Gov. Code § 68662.

Not only does the record show that prior state habeas counsel Morris abandoned Petitioner's case and failed to file a state habeas petition, but the record reflects that

_____

[4] In Frye v. Hickman, the Ninth Circuit explicitly distinguished capital cases from non-capital cases, explaining that in capital habeas cases, an indigent petitioner has a statutory right to counsel, and therefore the "dereliction of his appointed counsel made it impossible for the petitioner to file the petition he was statutorily entitled to file." Frye, 273 F.3d 1144, 1146 (9th Cir. 2001).

[5] 18 U.S.C. § 3599 (which in 2005 recodified 21 U.S.C. § 848(q)) reads, in part, as follows:

(2)   In any post-conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

successor state habeas counsel Barranco, who concurrently served as federal habeas counsel, also failed in her responsibility to Petitioner.  Both Morris and Barranco failed to properly communicate with Petitioner and update him on the status of his case, as evidenced by Petitioner's letters to the state and federal courts.  Barranco averred to the federal court at several points that she was close to filing a state habeas petition, even though such statements were later found to be untrue.  Moreover, as discussed in detail above, Barranco had possession of Petitioner's case files and record and failed to secure those files, allowing for their destruction.  Barranco also failed to keep the Court and co-counsel apprised of the status of the case, or to timely respond to this Court's orders, including those aimed at securing the remainder of Petitioner's files.  See Holland, 130 S.Ct. at 2564 ("A group of teachers of legal ethics tells us that these various failures violated fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client.")

In addition to Barranco's 2004 removal as counsel in both Petitioner's state and federal case, and her referral to the State Bar for disciplinary proceedings, she was ordered to reimburse the California Supreme Court "the sum of $20,250, subject to her ability to demonstrate to the court that she should be credited, as appropriate, for habeas corpus 'work performed that is determined by the court to be of value to the court.'" (Case No. S029453 at http://www.courts.ca.gov/supremecourt.htm.) Additionally, in 2006, the State Bar of California suspended Barranco from the practice of law due to misconduct and violations of professional responsibilities with respect to a number of clients, including Petitioner.  (Ex. 53 to FAP.)  Specifically, the State Bar Court concluded that:

> 131.   By failing to take any legal action or perform any work on Roybal's behalf after September 17, 2003, Respondent willfully violated Rules of Professional Conduct, rule 3-110(A).

132.   By moving her office without informing Roybal of her whereabouts; by not informing Roybal that she would not be completing the legal services for which she was appointed; by not promptly withdrawing from her representation of Roybal; and by not promptly releasing Roybal's file, Respondent failed to take reasonable steps to avoid reasonably foreseeable prejudice to the rights of a client, including giving due notice to the client and complying with Rule 3-700(D), in willful violation of Rules of Professional Conduct, Rule 3-700(A)(2).

(Id. at 26.)   On June 3, 2007, Barranco was disbarred from the practice of law in California, in part, due to similar types of misconduct as in Petitioner's case, including a failure to turn over client files.  (See Ex. 55 to FAP at 13); see Porter, 620 F.3d at 961 ("It has been held that a habeas petitioner represented by an attorney who was disbarred (or resigned the bar) for the same type of conduct as in the petitioner's case and required to return his fee was engaged in egregious conduct that constitutes extraordinary circumstances beyond attorney negligence."), citing Spitsyn, 345 F.3d at 798; see also Holland, 130 S.Ct. at 2568 (Alito, J., concurring) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word.")  Given the ample showing of prior appointed counsels' unprofessional behavior and misconduct, it is apparent that "extraordinary circumstances" are present in Petitioner's case that prevented the timely filing of the newly exhausted claims in federal court within one year of the conclusion of direct review.

The Court also finds that Petitioner has acted diligently in pursuing his rights.  See Doe, 661 F.3d at 1012-13 ("The purpose of requiring a habeas petition to show diligence is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file."), citing Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006), Spitsyn, 345 F.3d at 802.  As the Court previously noted, Petitioner sent a letter to the California Supreme Court in 1998, prior to the finalization of his conviction, pleading for their assistance after learning that his state habeas counsel intended to abandon his case.  Petitioner requested the appointment of federal habeas counsel on October 5, 1999, only one day after his petition for writ of

certiorari was denied by the California Supreme Court.  The record also reflects a number of status conferences between January and April 2003 in which the Court and counsel for Petitioner discussed communication problems between counsel and referenced communication problems with Petitioner.  Additionally, when Petitioner later learned that Babcock had been removed as counsel in May 2003, he promptly wrote to alert this Court to issues surrounding Barranco's representation, including the conflict between himself and counsel, her failure to update him on the status of his case, and that she instead shared with him her own personal issues.  As detailed above, the record also makes clear that current counsel has worked diligently to recover and reconstruct the record since their appointment to the case in September 2004, including contacting a large number of individuals involved in Petitioner's trial and appellate proceedings in attempts to obtain any documents in their possession, cataloging the files recovered from prior counsel and the other individuals, and pursuing discovery matters and other records in the trial court, state supreme court, and in this Court.

Moreover, as the relevant statutes discussed above make clear, a capital petitioner is entitled to the assistance of counsel during both state and federal habeas proceedings.  See 18 U.S.C. § 3599; Cal. Gov. Code § 68662.  The record demonstrates that Petitioner diligently attempted to exercise these rights and that the actions, failures, and misconduct of prior state habeas and federal habeas counsel, which was entirely beyond the control of Petitioner, severely obstructed his ability to exhaust his state habeas claims and file a comprehensive federal habeas petition within the AEDPA limitations period.  Therefore, the Court finds that equitable tolling is warranted in this case.

Petitioner requests that the Court equitably toll the limitations period starting from the appointment of Barranco and Babcock on December 14, 1999, to the denial of the state petition on January 3, 2013.  (Reply at 25-26.)  Given the circumstances of this case and the egregious conduct of prior counsel, some measure of equitable tolling is warranted.  Petitioner's request to equitably toll the statute of limitations starting on December 14, 1999 appears reasonable.

However, it also appears reasonable that the grant of equitable tolling shall only extend to the date that the state habeas petition was filed, October 1, 2007.  As discussed above, section 2244(d)(2) allows for suspension of the limitations period when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  Here, it appears that the state habeas petition was properly filed.  Indeed, counsel for Petitioner indicated in 2006 that under California Supreme Court rules, a state habeas petition filed within 36 months of their appointment to the case would be considered presumptively timely.  (See Doc. No. 185 at 8.)  Again, current counsel was appointed to represent Petitioner on state habeas on September 29, 2004, and the state habeas petition was filed on October 1, 2007.  In light of the grant of equitable tolling, which begins on December 14, 1999, about two and a half months after the AEDPA statute of limitations began to run, the state habeas petition was filed well within the limitations period.  Therefore, Petitioner warrants statutory tolling for the time the state habeas petition was pending in state court, from October 1, 2007 to January 3, 2013.  As the AEDPA limitations period again began to run after the denial of the state habeas petition, and Petitioner filed the Amended Petition on June 17, 2013, about five and a half months after the conclusion of those proceedings and after less than eight months had elapsed from the limitations period, the Amended Petition is timely.

### B.    Court's Prior Statements and Ruling on Equitable Tolling

Because the Court concludes that Petitioner is entitled to equitable tolling due to the misconduct of prior habeas counsel, and statutory tolling for the time the state habeas petition was pending in the California Supreme Court, the Court need not address whether its prior remarks about stay and abeyance could have "misled" Petitioner or would alternately serve to permit equitable tolling.  Moreover, Petitioner avers that "counsel were not misled by the Court which was clear about the status of the federal petition pending review of the state petition by the California Supreme Court." (Reply at 26.)

The Court agrees that it has consistently and repeatedly articulated that the most efficient and effective way to handle the instant case - at first, given the abandonment by the original state habeas counsel, and then later, in light of the problems engendered by the actions, or lack thereof, of federal and successor state habeas counsel - was to wait to proceed with the federal petition until after the state habeas proceedings had concluded and this Court had before it a comprehensive petition.

At a February 25, 2000 hearing, prior to the filing of the original federal petition, the Court, after directing federal counsel to file a petition containing only the previously exhausted claims, stated that "then on other claims that are being processed through the state system and become exhausted, they may be incorporated into the petition as those claims become viable in the federal system." (Doc. No. 239-1 at 6, Ex. A to Reply.) Then, as stated above, at the June 30, 2000 hearing, the Court directed Petitioner to file a federal petition containing only the previously-exhausted claims and indicated that it would stay the federal case if necessary. (Doc. No. 239-1 at 63, Ex. C. to Reply.) Accordingly, the September 29, 2000 Petition entitled "First Petition for Writ of Habeas Corpus By State Death Row Inmate As To Claims Previously Exhausted In State Court; Evidentiary Hearing Requested" included a footnote which read in part that, "[p]ursuant to the ruling of this Court on June 30, 2000, petitioner alleges herein only those claims previously exhausted in the courts of the State of California. Petitioner intends to file a subsequent petition in this court should claims which have not yet been adjudicated in the courts of the State of California be denied in that forum." (Doc. No. 25 at 1 fn. 1.)

After the initial Petition was filed and briefed, Respondent repeatedly advocated for the Court to proceed with adjudicating that petition, and the Court repeatedly declined to accede to those requests, repeatedly indicating an intention to wait until the conclusion of the state habeas proceedings and the filing of a comprehensive federal petition. For example, at an October 24, 2001 hearing, the Court noted that, "although Ms. Boustany [counsel for Respondent] has certainly had her separate responsibility in this case to see this Court moving ahead just as quickly as she wanted to move with

respect to the filed petition with the claims in that petition, I think ultimately this is the best road to go down. The anticipated state petition is certainly on the horizon at this point. Whatever action the California Supreme Court takes will either afford the petitioner relief or allow this Court to proceed with the petition before it as augmented or supplemented by any exhausted claims after the Supreme Court has acted." (Doc. No. 239-1 at 171-72, Ex. F to Reply.) Again, at a September 17, 2003 status hearing on issues surrounding Barranco's representation, the Court again noted that; "Another factor I need to get some clarification on would be the progress of the state case. Now, as you know, this is a case where in essence the tail wags the dog. The federal habeas petition cannot proceed before the state petition is perfected. . .". (Doc. No. 239-1 at 216, Ex. J to Reply; see also Doc. No. 239-2 at 12-13, Ex. K to Reply (October 23, 2003 hearing in which Court stated that: "I think for our purposes, that is, the purpose of this Court, it is going to be important to get some reliable information about what's happening with the state petition, what is the state likely to do at this point, what is the Supreme Court going to do, you know, because in a sense, the state petition has always controlled the circumstances, the timing, of the federal habeas going forward.")).

After Petitioner filed the state habeas petition in October 2007, the Court again indicated an inclination to hold off on the resumption of federal proceedings until the conclusion of any pending state habeas proceedings, stating that, "Basically, we've been holding this case in abeyance . . . until [Petitioner] had an opportunity to file a fully integrated petition before the California Supreme Court, giving that Court an opportunity to rule." (Doc. No. 239-2 at 213, Ex. T to Reply.) The Court stated that, "I don't see any prejudice by waiting until the California Supreme Court acts on this and at that point you file an amended petition." (Id.) Moreover, as Petitioner points out, the state record reflects that Respondent also operated under the view that the initial petition was stayed in federal court during the pendency of the state proceedings. (Reply at 19.) In the Informal Response to the state habeas petition, Respondent stated that, "Roybal has a pending habeas proceeding in the United States District Court, *Roybal v. Ayers*, case

number 99CV 2152-JM, which is presently stayed pending Roybal's exhaustion of his state remedies in this Court."  (Lodgment No. 140 at 4.)

As a related matter, Petitioner's prior motion for equitable tolling is distinguishable from the instant situation.  On June 16, 2000, prior federal counsel moved to toll the AEDPA deadline in light of the delay in appointing federal counsel, the fact that they did not receive the files until a month after their appointment to the case, and the disorganized state of the files received.  (Doc. No. 19.)  At the June 30, 2000 hearing, the Court denied the motion for equitable tolling, premised on the understanding that the petition to be filed by October 2000 would only include exhausted claims.  (See Doc. No. 239-1, Ex. C to Reply at 63-65.)  As the Court clearly stated:

> It seems to me that - - and I say this now with some understanding as to what the Roybal case consists of, having read the opinion and being aware of the underlying procedural and substantive history, that in fact a federal habeas petition may be filed by October of this year, an exhausted petition, and that is what I am - - that is what I am suggesting, that it is not necessary for counsel in connection with the federal case, to peruse and master 500,000 pages of investigatory material, if that is what is there, prior to the filing of an exhausted federal habeas petition in this case.

> I think that's the manner in which this case should proceed, that there should be a filing of an exhausted habeas petition, that counsel at that point, if they need to put a substantial amount of their focus and attention on what's happening with the state petition, that they can turn their efforts in that direction, deal with the California Supreme Court, seek compensation there; but at least you'll have an exhausted petition on file here.

(Id. at 65.)

Thus, it is evident that the prior request for equitable tolling solely concerned the time limitation for filing the original petition containing only exhausted claims, and did not contemplate the filing of a comprehensive federal petition.  Moreover, given that the prior request was made early in the pendency of the federal case and prior to the misconduct and attendant events detailed above, it does not bear on the Court's present decision to grant equitable tolling based on the misconduct of prior counsel.

## C.  Request for Leave to Amend Petition and Procedural Contentions

Because Petitioner is entitled to equitable and statutory tolling and the Amended Petition was filed before the statute of limitations had run, the new claims need not relate

back to the date of the original Petition, and are not governed by Rule 15(c) of the Federal Rules of Civil Procedure.  <u>Contrast</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 655 ("Amendments made *after* the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar(i)se out of the conduct, transaction, or occurrence.' Rule 15(c)(2)") (emphasis added.)  As such, Rule 15(a) states that in cases in which a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  A responsive pleading, the Answer, has been filed and Respondent has declined to give consent to amendment.  (<u>See</u> Doc. No. 26; Opp. at 9.)  As such, leave of this Court is required for amendment.

"Although, under [Rule 15(a)], 'leave shall be freely given when justice so requires,' the district court may consider whether there is any evidence of 'undue delay, bad faith or dilatory motive' with respect to the filing of the amendment when determining whether leave should be granted." <u>Anthony v. Cambra</u>, 236 F.3d 568, 577 (9th Cir. 2000), quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  The Supreme Court has also instructed that the district court should consider other factors including "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" in determining whether to grant leave to amend.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Bonin v. Calderon</u>, 59 F.3d 815, 844-45 (9th Cir. 1995) (applying Rule 15(a) to amendment of a habeas petition).  "The party opposing amendment bears the burden of showing any of the factors above." <u>Ortegoza v. Kho</u>, 2013 WL 2147799, *6 (S.D.Cal. May 16, 2013), citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987).  "Absent prejudice, or a strong showing of any of the remaining <u>Foman</u> factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original).

*///*

The Court finds no indication of undue delay, bad faith, dilatory motive, or failures of prior amendments, as it is evident that present counsel have proceeded in a diligent manner in reconstructing Petitioner's trial and appellate files, preparing and filing the state habeas petition in a timely manner, and returning to federal court with a comprehensive First Amended Petition after the conclusion of the state proceedings. The Court also finds no undue prejudice to the opposing party, as Respondent has been aware of the substance of the claims contained in the amendment since at least October 2007, when the state habeas petition was filed in the California Supreme Court.

Respondent also asserts that Petitioner should be denied leave to amend with respect to Claims 13, 23, 24 and 33 due to futility, as those claims are procedurally defaulted, and argues that "[t]he futility of amendment is also evident because habeas relief will be foreclosed by the relitigation bar of 2254(d)" as to each of the twenty-six new claims in the Amended Petition. (Opp. at 19-24.) With respect to Respondent's assertion of a state procedural bar, Petitioner maintains that he has also raised a claim of ineffective assistance of appellate counsel for failing to raise the ostensibly defaulted claims, and argues that "[f]urther briefing on these issues is therefore necessary to determine if the failure of appellate counsel to raise these four claims is sufficient cause and prejudice to allow this Court to review these claims despite the procedural bar indicated by the California Supreme Court." (Reply at 39.) Petitioner also asserts that "Respondent's claim for global preclusion of review of the claims raised in the amended [sic] overstates the deference to the state court even under the objectively unreasonable standard of review," and notes that the Supreme Court has granted habeas corpus relief under this standard of review on claims factually similar to those contained in the amended petition. (Id. at 40.)

An amendment may be futile where the claim in question are unexhausted, untimely, procedurally defaulted, or where the legal basis for the claim is tenuous. See Caswell v. Calderon, 363 F.3d 832, 837-39 (9th Cir. 2004). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin, 59 F.3d at 846.

Here, Respondent fails to satisfy the burden of showing that amendment is futile. While Respondent alleges the existence of a procedural bar as to four of the claims in the amended petition and asserts that Petitioner cannot overcome that bar, Petitioner has alleged the existence of cause and prejudice. Moreover, while Respondent generally asserts that Petitioner will be unable to surmount the "relitigation bar" of section 2254(d), he fails to offer any specific argument as to why habeas relief is foreclosed on each of the twenty-six new claims in the amended petition. Accordingly, in light of the acknowledged presumption in favor of granting leave to amend, and because the Court remains unpersuaded that amendment would be futile, Petitioner's motion for leave to amend is **GRANTED** without prejudice to Respondent to raise available affirmative defenses to the claims contained in the First Amended Petition.

## IV.   CONCLUSION

For the reasons discussed above, Petitioner's Motion for Leave to File a First Amended Petition is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  December 16, 2013

_____
Hon. Jeffrey T. Miller
United States District Judge