UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLPH ROYBAL,<br><br>　　　　　　　　　Petitioner,<br><br>vs.<br><br>KEVIN CHAPPELL, Warden of the California State Prison at San Quentin,<br><br>　　　　　　　　　Respondent. | Case No.   99cv2152-JM (KSC)<br><br>**DEATH PENALTY CASE**<br><br>**ORDER DENYING PETITIONER'S APPLICATION FOR A STAY IN THE FEDERAL HABEAS PROCEEDING [ECF No. 246]** |

On June 3, 2014, Petitioner filed an Application for a Stay in the Federal Habeas Proceeding pursuant to Rhines v. Weber, 544 U.S. 269 (2005), in order to allow him to seek further review of Claim 3 of his prior state habeas petition (Claim 11 of the First Amended Petition filed in this Court). (ECF No. 246.) Petitioner alleges that he is ineligible for a death sentence under Atkins v. Virginia, 536 U.S. 304 (2002), and that the United States Supreme Court's recent decision in Hall v. Florida, 572 U.S. ___, 134 S.Ct. 1986 (May 27, 2014), has rendered this claim unexhausted. (ECF No. 246-1 at 7-9.) On July 8, 2014, Respondent filed an Opposition to Petitioner's Application, and on July 24, 2014, Petitioner filed a Reply. (ECF Nos. 252, 256.)

For the reasons discussed below, Petitioner's Application is **DENIED**.

# DISCUSSION

"An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard v. Connor, 404 U.S. 270, 275 (1971).

Prior to 2005, the Supreme Court espoused a "total exhaustion" rule and held that "a district court must dismiss habeas petitions containing both exhausted and unexhausted claims." Rose v. Lundy, 455 U.S. 509, 522 (1982). Then, in Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court reconsidered Lundy's total exhaustion rule in light of the enactment of AEDPA's 1-year statute of limitations, and provided for "limited circumstances" under which a stay and abeyance procedure was available for a "mixed" petition, that is, a petition containing both exhausted and unexhausted claims. Id. at 276-77. The Rhines Court held that stay and abeyance was appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the unexhausted claims were not "plainly meritless" and (3) there is no indication that the petitioner had "engage[d] in abusive litigation tactics or intentional delay." Id. at 277-78.

Petitioner presented Claim 11 of the First Amended Petition to the California Supreme Court as Claim 3 of his state habeas petition in Case No. S156846. (Lodgment No. 133.) The California Supreme Court denied the claim on the merits without a statement of reasoning, as follows:

> The "Petition for Writ of Habeas Corpus" filed October 1, 2007, is denied. Claim 19 is denied as premature without prejudice to petitioner's filing a renewed petition after an execution date is set. (People v. Lawley (2002) 27 Cal.4th 102, 169, fn. 25.) All remaining claims are denied on the merits.
>
> Additionally, claims 4, 6, 7, 8 and 9 are denied on the ground that they could have been, but were not, raised on appeal. (In re Dixon (1953) 41 Cal.2d 756, 759.)

(Lodgment No. 144.)

In support of his Application, Petitioner contends that "[t]he failure to exhaust the *Atkins* claim in Mr. Roybal's case was not deliberate or an attempt to delay or sandbag this issue. It was not until May 27, 2014, that the Supreme Court clearly rejected the strict threshold of an IQ 70 to determine 'mental retardation' and instead laid out the full scope of evidence to determine if the accused suffered from such severe 'intellectual disabilities' that a death sentence is prohibited under the Eighth Amendment." (ECF No. 246-1 at 10.)

While Petitioner evidently asserts that the Hall decision has rendered Claim 11 unexhausted, the Court remains unpersuaded. First, the issuance of Hall did not cause Petitioner to discover the existence of a new claim, as it is clear that Petitioner presented this Atkins claim to the California Supreme Court in his October 1, 2007, state habeas petition. Neither does Hall "change[] federal law in a way that cast(s) the legal issue in a fundamentally different light." Hudson v. Rushen, 686 F.2d 826, 830 n.2 (9th Cir. 1982), citing Blair v. California, 340 F.2d 741 (9th Cir. 1965).

The Hall Court appears to have instead clarified the State of Florida's implementation of Atkins, in holding that Florida's "rigid rule," which "defines intellectual disability to require an IQ test score of 70 or less" and refuses to consider additional evidence if IQ testing is above that cutoff, is unconstitutional. Hall, 134 S.Ct. at 1990. California does not have a similarly "rigid rule," and in fact, the California Supreme Court specifically declined to adopt an IQ cutoff like that at issue in Hall, explaining that "a fixed cutoff is inconsistent with established clinical definitions and fails to recognize that significantly subaverage intellectual functioning may be established by means other than IQ testing." In re Hawthorne, 35 Cal. 4th 40, 48 (2005). Indeed, the Hall Court acknowledged that a total of nine states implemented rules similar to Florida, and that California was not among them. Hall, 134 S.Ct. at 1997 (indicating that California was among five states to "have passed legislation allowing a defendant to present additional evidence of intellectual disability even when an IQ test score is above 70," citing to California Penal Code section 1376 and describing the statute as

having "no IQ cutoff.")

Yet, Petitioner argues that because the California Supreme Court "obviously did not have the guidance" of the Hall decision in adjudicating Petitioner's state habeas claim, and given that the state supreme court's denial of the Atkins claim was made without a statement of reasoning, "it is impossible to determine which standard (*Atkins* versus California Penal Code § 1376, assuming they are different) that court applied." (ECF No. 246-1 at 8.)

However, again, Atkins did not itself implement a fixed cutoff rule, but instead specifically left it to the states to formulate procedures consistent with the Supreme Court's ruling. See Atkins, 536 U.S. at 317 ("we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentence."), quoting Ford v. Wainwright, 477 U.S. 399, 405, 416-17 (1986). In response to Atkins, the State of California implemented rules and procedures to adjudicate claims of intellectual disability,[1] defining the term as follows: "As used in this section, 'intellectual disability' means the condition of significantly subaverage intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before 18 years of age." Cal. Penal Code § 1376(a). In order to demonstrate a postconviction claim under section 1376, the California Supreme Court requires a prisoner to submit a habeas petition and accompanying expert declaration. See In re Hawthorne, 35 Cal. 4th at 47. "[T]he expert's declaration must set forth a factual basis for finding the petitioner has significantly subaverage intellectual functioning and deficiencies in adaptive behavior in the categories enumerated above. The evidence must also establish that the intellectual and behavioral deficits manifested prior to the age of 18." Id. at 48. As stated above, the California Supreme Court specifically

---

[1] The current version of section 1376 uses the term "intellectual disability," replacing the term "mentally retarded," which was used in a prior version of the statute. This change in terminology has been adopted by numerous courts and organizations, including the Supreme Court. See Hall, 134 S.Ct. at 1990 ("Previous opinions of this Court have employed the term "mental retardation." This opinion uses the term "intellectual disability to describe the identical phenomenon.")

declined to interpret section 1376 as including a fixed IQ score cutoff. See id. Moreover, it is also evident from the Court's review of the state habeas petition and accompanying exhibits that Petitioner presented the California Supreme Court with a significant number of expert declarations, test results, and other evidence which he cited to in support of the Atkins claim presented to that court. (See Lodgment No. 134, Exs. 9, 10, 12.)

Petitioner nevertheless argues that "[h]ad Mr. Roybal at that time raised the more expansive analysis adopted by the United States Supreme Court in *Hall*, that claim would not have been preserved for federal habeas review because it was not clearly stated by the United States Supreme Court until *Hall* that the Eighth Amendment also prohibited the execution of persons like Mr. Roybal whose IQ is greater than 70, if other factors, such as those presented before the California Supreme Court with the results of neuropsychological and neurological testing, showed a significant "intellectual disability." (ECF No. 246-1 at 8-9.) He maintains that "[t]he only time that a revised *Atkins* claim could be raised in either a state or federal habeas petition is now, when it is clear under *Hall* that the other evidence presented concerning Mr. Roybal's mental condition shows he suffered from an intellectual disability that prohibits his execution under the Eighth Amendment." (ECF No. 246-1 at 9.)

Again, given that both the relevant California statute and subsequent case law already clearly provides for the submission of supplemental evidence regarding Petitioner's intellectual functioning and does not employ any fixed cutoff, the Court is not persuaded that the Hall decision either creates a new claim or "cast[s] the legal issue in a fundamentally different light." Hudson, 686 F.2d at 830 n.2, citing Blair, 340 F.2d 741. Petitioner fails to persuasively explain how the procedures currently implemented by California courts for the analysis and resolution of claims of intellectual disability by capital petitioners are materially impacted by Hall. He instead argues that the state supreme court's adjudication of this claim was based on clearly established federal law at the time of that decision and contends that under Hall, "[t]he claim that Mr. Roybal

is exempt from execution under *current* federal law as interpreted by the United States Supreme Court has not been exhausted." (Reply at 3.) However, the Ninth Circuit has clearly rejected this interpretation of the exhaustion requirement. See Hudson, 686 F.2d at 830 ("While the state must have the opportunity to pass upon petitioner's constitutional claim, exhaustion of remedies does not require that the state have had the opportunity to pass on the claim under the particular authorities advanced in the federal habeas court.")

Thus, despite the recent decision in Hall, it is clear that all of the claims contained in the First Amended Petition (including the Atkins claim) were previously presented to the California Supreme Court for review and are exhausted. As such, this Court is not faced with a "mixed" petition, and the Rhines stay and abeyance procedure[2] is unavailable.[3]

## CONCLUSION

For the reasons discussed above, because Petitioner fails to demonstrate that a Rhines stay is either available or appropriate in this case, the Court **DENIES** Petitioner's request for stay and abeyance. Petitioner remains free to again present his Atkins claim to the California Supreme Court, but does not warrant a stay and abeyance of the federal proceedings under the circumstances presented here.

**IT IS SO ORDERED.**

DATED: August 5, 2014

_____
Hon. Jeffrey T. Miller
United States District Judge

---

[2] Similarly, the three-step, withdrawal and abeyance procedure is also unavailable to Petitioner, as that procedure is also only contemplated when the federal court has been presented with a mixed petition. See Kelly v. Small, 315 F.3d 1063, 1070 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143, 1149 (9th Cir. 2007).

[3] In light of this order, the court concludes that a retroactivity analysis of Hall under Teague v. Lane, 489 U.S. 288 (1989) is unnecessary.